**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| DATWONE B. FRY,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, DAWN BUSS, WARDLOW,<br><br>Defendants. | CAUSE NO. 3:26-CV-670-PPS-JEM |

## OPINION AND ORDER

Datwone B. Fry, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C. § 1915A, the complaint must be dismissed if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint needs to contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I must give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Fry's complaint raises two distinct factual matters. The first one deals with an incident that took place on April 8, 2026, when Fry was dragged to his cell in the Indiana State Prison by two or more officers. ECF 1 at 2. He says he was punched, pulled, and physically restrained on the cell's bars while one officer pulled his hair and

another tasered him, all while his right hand was cuffed. *Id*. He claims this happened because he was having a reaction to tear gas that was used in his cellblock. *Id*. He alleges he told a Sergeant Soto and his unnamed partner—who was wearing a mask—that he couldn't breathe or swallow due to the tear gas and needed to be taken to medical. *Id.* They responded with the force described above. Fry claims this occurred "in front of" Major Wardlow who saw the distress he was in and ordered the officers to "unpinch me from the door." *Id*. He was then handcuffed and taken to the medical unit, where he remained for five hours. While there, he was given a breathing treatment for the tear gas exposure. Afterward, he was returned to the same unit, which he says wasn't "decontaminate[d]." *Id*. at 3. Fry hasn't actually named as defendants any of the officers who allegedly assaulted him.

The other matter raised in Fry's complaint concerns the condition of his cell. He says his personal television and fan were taken from him; the power was shut off, which left his cell dark; his toilet and sink smell bad; and the water is brown. He claims he is forced to drink the "brown" water or "die of dehydration." *Id*. He notified Major Wardlow and his staff of the conditions, but nothing has been done. Fry is suing Warden Ron Neal, Deputy Warden Dawn Buss, and Major Wardlow for injunctive relief in the form of having the defendants "removed from being the head of administration at ISP." *Id*. at 4.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is

that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (cleaned up). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id.* at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force can be warranted. *Id.* at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Courts consider several factors when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *See Hendrickson*, 589 F.3d at 890.

As noted above, Fry hasn't actually sued the officers who assaulted him. If he had, that may well state a claim. Instead, he brings this action against three administrators, none of whom were personally involved in the use of excessive force against him. But they can't be held liable for an Eighth Amendment violation in which they were not involved. *Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A

defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") Fry does say the incident occurred "in front of" Major Wardlow, but he admits Major Wardlow actually helped him by ordering the officers to "unpinch" him when he saw that Fry was in distress and had him immediately taken to the medical unit. ECF 1 at 2. These allegations don't state a plausible claim against Major Wardlow. *See, e.g., Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022) (holding an officer must have had a "realistic opportunity to intervene to prevent the harm from occurring" and must have actually failed to do so to be liable in such cases).

As to the condition of his cell, the Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). An official can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id.* at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the

defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

With regard to the seriousness of the conditions, "[p]risons must 'provide humane conditions of confinement.'" *Fernandez Haire v. Hepp*, No. 25-1023, 2026 WL 2445437, at *1 (7th Cir. Aug. 20, 2026) (quoting *Farmer*, 511 U.S. at 832). But "that does not mean that prisons must provide a maximally safe environment free from any minor contaminants." *Id.* (citing *Carroll v. DeTella*, 255 F.3d 470, 472–73 (7th Cir. 2001)). Generally, "challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" are insufficient. *Id.* Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state a constitutional claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 615.

Fry's complaint is just too flimsy to state a condition of confinement claim. Indeed, he describes the condition of his cell in a vague manner, and almost as an afterthought. He says the power in his cell was turned off leaving him in the dark, but he doesn't otherwise describe the cell or the lighting situation. Depending on the circumstances, light deprivation may trigger Eighth Amendment concerns, although the contours of such a claim are still largely undefined in the Seventh Circuit. *See, e.g.*, *Blanchard v. Hyatte*, No. 3:21-CV-160-CCB-SJF, 2024 WL 4038080, at *2–3 (N.D. Ind. Sept. 4, 2024) (collecting cases). What is clear, however, is that lack of artificial lighting, alone, doesn't violate the Constitution; rather, the totality of the circumstances must be considered. *See id.* at *4 (describing cell conditions, in detail, which left plaintiff in "near-total darkness" and caused him physical and emotional injuries); *see also Schwartz v. Warden*, No. 3:26-CV-604-GSL-JEM, 2026 WL 1279090, at *2 (N.D. Ind. May 8, 2026) (allowing claim to proceed where plaintiff described his specific "bubble cell" at the back of the range under a stairwell as having "steel plates covering the bottom half of the cell" and alleged he was in "complete darkness" twenty-four hours a day). Here, Fry's vague description of his cell being "dark" isn't sufficient to state a plausible claim. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.")

Fry also says the water in his sink and toilet is brown and smells of sewage. He claims he is forced to drink that water or "die of dehydration." Unfortunately, he provides no details on this claim. He doesn't, for example, explain when the water

began to look and smell bad, how long he was subjected to it, or whether he receives any other beverages with his meals. Nor does he allege he has experienced any harmful effects from the discolored and smelly water. He says he "notif[ied] Major Wardlow & his staff" about the conditions in general, but he doesn't say when or what he told them. ECF 1 at 3. Without additional details, Fry's allegations about the water in his cell aren't sufficient to state a claim. *See, e.g.*, *Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (stating a complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement"); *Schillinger*, 954 F.3d at 994 (complaint must include adequate factual detail); *see also Stapleton v. Carr*, 438 F. Supp. 3d 925, 937–38 (W.D. Wis. 2020) (discussing different types of water claims and finding inmates are not entitled to water that is either "completely free from pollution or safety hazards" or aesthetically pleasing).

As a final matter, it's clear that the allegations about his cell are unrelated to the alleged assault in April 2026. "Unrelated claims against different defendants belong in different suits . . . ." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (stating a litigant can't combine his claims against different parties "into one stewpot"). The Seventh Circuit Court of Appeals has repeatedly urged district courts to "be alert" to the issue of unrelated claims. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). The Seventh Circuit has "warned that district courts should not allow inmates to flout the rules for joining claims and defendants, *see* Fed. R. Civ. P. 18, 20, or to circumvent the Prison Litigation

Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Id*.

Here, Fry has sued the Warden, Deputy Warden, and Major Wardlow, but supervisor liability isn't enough to link these disparate claims together. *See Thompson v. Bukowski*, 812 Fed. Appx. 360, 363 (7th Cir. 2020). Fry's unrelated claims can't be brought together in one lawsuit simply because they happened at the same prison. *Id.*

As it stands, the current complaint fails to state any claims. If Fry believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form. If he chooses to file an amended complaint, he must either clarify how the claims are related, or he may choose to pursue the unrelated claims in separate lawsuits.[1] *See Wheeler*, 689 F.3d at 683 (stating district courts may direct a plaintiff "to file separate complaints, each confined to one group of injuries and defendants"); *see also Owens*, 860 F.3d at 436; *George*, 507 F.3d at 607.

[1] Each complaint will be assigned a new case number and will proceed as an independent case, subject to the usual filing fees, costs, and constraints of the Prisoner Litigation Reform Act.

Accordingly:

(1) Datwone B. Fry is GRANTED until **November 30, 2026**, to file an amended complaint containing only related claims as described above; and

(2) Datwone B. Fry is CAUTIONED that if he doesn't do so by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint doesn't state any claims for which relief can be granted.

SO ORDERED on October 23, 2026.

/s/Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT